UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

RAFAEL JIMINEZ,                           :

                    Petitioner,           :   02 Civ. 7322 (BSJ)(HBP)

        -against-                         :   REPORT AND
                                              RECOMMENDATION
COMMISSIONER OF CORRECTIONAL              :
SERVICES, STATE OF NEW YORK,
                                          :
                    Respondent.
                                          :
------------------------------------X


            PITMAN, United States Magistrate Judge


            TO THE HONORABLE BARBARA S. JONES, United States

District Judge:


I.   Introduction


            Rafael Jiminez seeks, by his petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, an Order vacating the

judgment of conviction entered on May 12, 1999, after a jury

trial in the Supreme Court of the State of New York, New York

County (Wittner, J.), for one count of conspiracy in the second

degree in violation of New York Penal Law Section 105.15.  By

that judgment, petitioner was sentenced to an indeterminate term

of imprisonment of eight and one-half years to twenty-five years.

Petitioner was released from custody on February 23, 2004 and is

currently on parole.

For the reasons set forth below, I respectfully recommend that this petition be denied.

II. Facts

    A. Background

Petitioner's conviction was the product of a nearly year-long investigation by the New York Drug Enforcement Task Force (the "NYDETF") and a ten-day trial that resulted in over 2400 pages of trial transcript. Given the volume of the underlying facts, I shall address only those facts relevant to the disposition of the issues raised in the petition.

Sometime in October 1996, the NYDETF began investigating petitioner and his associates for possible involvement in the distribution and sale of cocaine (Tr.[1] 194-95, 213). The NYDETF obtained wiretap orders based on information it received from confidential informants (Tr. 59-75, 84-85, 107-12, 194-97, 212-25, 341-42).

The evidence gathered during the investigation and offered at trial showed that from approximately January through September 1997, petitioner conspired with, inter alia, his son, Yensi Jiminez, Oscar Cano, Bienvenido Herrera, Luis Liz and J.D. Papion to sell approximately 155 kilograms of cocaine, which

_____

    [1]"Tr." refers to the transcript of petitioner's trial.

petitioner received on consignment from Columbian cocaine traf-
fickers (see, e.g., Tr. 213, 519, 695-96, 702-27, 732-44, 751-52,
999-1008, 1081-88, 1133-34, 1156-93).

Petitioner was arrested on September 25, 1997 and was
indicted on October 9, 1997 (Respondent's Memorandum of Law in
Opposition to Petition for a Writ of Habeas Corpus, dated Febru-
ary 13, 2003 ("Resp't Mem."), at 21, 24). The indictment charged
petitioner with one count of conspiracy in the second degree
(N.Y. Penal L. § 105.15), two counts of criminal sale of a
controlled substance in the first degree (N.Y. Penal L. § 220.21)
and two counts of criminal possession of a controlled substance
in the first degree (N.Y. Penal L. § 220.43) (Resp't Mem. at 24;
Special Narcotics Indictment No. 8006/97 annexed as Ex. A to
Declaration of Assistant Attorney General Darian B. Taylor in
Opposition to Petition for a Writ of Habeas Corpus, executed
February 14, 2003 ("Taylor Decl."), at 16-28).

On March 12, 1999, a jury found petitioner guilty of
the conspiracy count, but acquitted him of the two counts of
criminal sale of a controlled substance in the first degree; the
Trial Court did not submit to the jury the two counts of criminal
possession of a controlled substance in the first degree (Resp't
Mem. at 24-25, n.22; Verdict Sheet annexed as Ex. A to Taylor
Decl. at 106). Petitioner was sentenced on May 12, 1999 to an

indeterminate term of imprisonment of eight and one-half years to twenty-five years (Resp't Mem. at 1, 25).

B.  Procedural History

Petitioner, assisted by counsel, appealed his conviction to the Appellate Division, First Department, asserting the following two main issues:  (1) that he was denied his Sixth Amendment right to confront Liz effectively because Liz invoked his Fifth Amendment right against self-incrimination during cross-examination and (2) that, absent the testimony of Liz and Cano, both of whom were fellow conspirators, there was insufficient evidence to convict him (Petitioner's Brief to the Appellate Division, First Department, dated December 4, 2000 ("Pet. App. Brf."), at i, 47, 54, annexed as Ex. B to Taylor Decl.). The fact section of petitioner's appellate brief also contained a footnote that read:

> We cite [the non-disclosure of the informants' identities] as Reversible Error since it violated Appellant's Sixth Amendment right to confrontation (Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748 (1968); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038 (1973); Moressy v. Brewer, 408 U.S. 471, 92 S.Ct. 2583 (1972), and Point I infra.

(Pet. App. Brf. at p. 2, n.1 (emphasis in original)).  The brief contained no other discussion concerning the non-disclosure of the informants.  The Appellate Division unanimously affirmed

4

petitioner's conviction.  <u>People v. Jiminez</u>, 287 A.D.2d 297, 297, 731 N.Y.S.2d 359, 359 (1st Dep't 2001).

Petitioner sought leave to appeal to the New York Court of Appeals, asserting the same two issues raised on direct appeal (Letter of Irving Anolik, Esq. to the New York Court of Appeals, dated October 26, 2001, ("Anolik Letter I") at 1-2, annexed as Ex. E to Taylor Decl.).  The Court of Appeals denied petitioner's application for leave to appeal, without opinion, on December 28, 2001.  <u>People v. Jiminez</u>, 97 N.Y.2d 683, 683, 764 N.E.2d 403, 403, 738 N.Y.S.2d 299, 299 (2001).  Petitioner made a subsequent application for leave to appeal, which the Court of Appeals deemed timely but also denied (Letter of Irving Anolik, Esq. to the New York Court of Appeals, dated June 3, 2002, ("Anolik Letter II") annexed as Ex. E to Taylor Decl.; Certificate Denying Leave to Appeal, signed by George Bundy Smith, Associate Judge, New York Court of Appeals, dated July 25, 2002).  In his second application for leave to appeal, petitioner raised the same two issues noted above, (Anolik Letter II at p. 2-10, ¶¶ 5-36), plus a claim that the failure to reveal the identities of the NYDETF's confidential informants was a violation of petitioner' Sixth Amendment right to a confront witness against him (Anolik Letter II at p. 2, ¶¶ 3-4).

Petitioner filed the present petition on September 12, 2002.

III. <u>Analysis</u>

Petitioner asserts the following three claims in his habeas petition: (1) the failure to reveal the identities of the NYDETF's confidential informants, who provided information used to procure warrants for wiretap orders, was a violation of the Fifth, Sixth and Fourteenth Amendments (Pet. ¶ 12 Addendum annexed thereto at 1); (2) he was denied his Sixth Amendment right to confront Liz effectively when Liz invoked his Fifth Amendment right against self-incrimination during cross-examination (Pet. ¶ 12 Addendum annexed thereto at 1-5); and (3) there was insufficient evidence to convict him without the testimony of fellow conspirators Liz and Cano (Pet. ¶ 12 Addendum annexed thereto at 2-5).

Respondent does not dispute that the petition was timely filed (Resp't Mem. at 27-28), nor does respondent dispute that petitioner's second and third claims were properly exhausted (Resp't Mem. at 29-30). Respondent does contend, however, that petitioner's first claim was not properly exhausted and should be found to be procedurally barred (Resp't Mem. at 30).

A. Standard of Review
   <u>for Exhausted Claims</u>

Where the state court has addressed a habeas petitioner's claims on the merits, a habeas petitioner must meet a

stringent standard before a federal court can issue the writ. Specifically, 28 U.S.C. § 2254(d) provides that in such a situation, habeas relief may be granted only when the Trial Court's decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has explained the alternative standards contained in the former paragraph as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). See also Early v. Packer, 537 U.S. 3, 7-8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). . . .

> Second, respondent can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law. As we have explained:

>> "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. See Bell v. Cone, 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Williams, supra, at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

7

Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Price v. Vincent, 538 U.S. 634, 640-41 (2003); accord Brown v. Payton, 125 S.Ct. 1432, 1438 (2005); see also Lockyer v. Andrade, 538 U.S. 63, 70-72 (2003); Brown v. Artuz, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-97 (2d Cir. 2005), petition for cert. filed, No. 05-7930 (Aug. 17, 2005).

"Unreasonableness is determined by an 'objective' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000). In order for a state court's application of Supreme Court precedent to be unreasonable, "[s]ome increment of incorrectness beyond error" is required. Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (internal quotation marks omitted); accord Brown v. Artuz, supra, 283 F.3d at 500-01; Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). However, "the increment need not be great; otherwise habeas relief would be limited to state court decision 'so far off the mark as to suggest judicial incompetence.'" Francis S.

8

v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999) (en banc); accord Gersten v. Senkowski, supra, 426 F.3d at 607. Finally, the nature of the rule in issue also impacts the assessment of the reasonableness of the state court's action.

> [W]hile very specific rules may not permit much leeway in their interpretation, the same is not true of more general rules, the meaning of which "must emerge in application over the course of time." [Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)]. "The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Id.

Serrano v. Fischer, supra, 412 F.3d at 297.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, supra, 529 U.S. at 412. "That federal law, as defined by the Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002). "A petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d 104, 109 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

In order to be entitled to the deferential standard of review, the state courts must have resolved a petitioner's claims

9

"on the merits." <u>Cotto v. Herbert</u>, 331 F.3d 217, 230 (2d Cir.
2003). "A state court adjudicates a claim 'on the merits' for
purposes of § 2254(d) when it '(1) disposes of the claim on the
merits, and (2) reduces its disposition to judgment . . . . even
if the state court does not explicitly refer to either the
federal claim or to relevant federal case law.'" <u>Serrano v.
Fischer</u>, <u>supra</u>, 412 F.3d at 296, <u>quoting</u> <u>Gutierrez v. McGinnis</u>,
389 F.3d 300, 304 (2d Cir. 2004). A state court's summary
statement that a claim is "without merit," without further
explanation, constitutes an adjudication on the merits for
purposes of § 2254(d). <u>Serrano v. Fischer</u>, <u>supra</u>, 412 F.3d at
296; <u>see</u> <u>Howard v. Walker</u>, 406 F.3d 114, 122 (2d Cir. 2005).

When the state court has not resolved a habeas peti-
tioner's claim on the merits, the state court's decision is
subject to <u>de novo</u> review. <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at
230; <u>Diaz v. Herbert</u>, 317 F. Supp.2d 462, 470 (S.D.N.Y. 2004).

In this case, there is little question that the Appel-
late Division addressed petitioner's second and third claims on
the merits. The Appellate Division found these claims to be
without merit, stating:

> The verdict was based on legally sufficient evi-
> dence and was not against the weight of the evidence.
> In addition to testimony from two of defendant's co-
> conspirators, there was a wealth of evidence, including
> narcotics records and intercepted conversions, to prove
> that defendant conspired to possess and sell numerous
> kilograms of cocaine.

10

> The court properly exercised its discretion when
> it advised a witness about the possible legal conse-
> quences of giving self-incriminating testimony regard-
> ing a murder unrelated to the conspiracy in question,
> and instructed the jury that it could utilize the
> witness's invocation of his right to refuse to answer
> questions related to the murder in assessing his credi-
> bility (People v Siegel, 87 NY2d 536).  Contrary to
> defendant's claim, such questions pertained to a
> collateral matter and the court appropriately chose the
> least drastic alternative of giving a limiting
> instruction rather than striking the testimony of the
> witness.

People v. Jiminez, supra, 287 A.D.2d at 297, 731 N.Y.S.2d at 359.

The foregoing language clearly demonstrates that the

Appellate Division addressed the substance of these claims and

does not even intimate that procedural deficiencies played any

role in the court's decision.  In light of the language it used,

I conclude that the Appellate Division did resolve two of peti-

tioner's claims on the merits and that its decision as to these

claims is, therefore, entitled to the deferential standard of

review set forth in Section 2254(d).

With respect to petitioner's remaining claim, that the

failure to reveal the identities of the NYDETF's confidential

informants was a Sixth Amendment violation, I need not address

whether the claim is exhausted or was adjudicated on the merits.

As explained below, even if reviewed under a de novo standard,

this claim fails on the merits.  See 28 U.S.C. § 2254(b)(2);

Morales v. Greiner, CV-98-6284 (FB), 2005 WL 1009545 at *5

(E.D.N.Y. May 2, 2005) (a federal court may "exercise[] its

11

discretion under 28 U.S.C. § 2254(b)(2) to deny the claim on the merits rather than stay for exhaustion," and, in doing so, reviews the claim de novo); accord Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002) (a district court may deny unexhausted habeas claims on the merits); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000) (same).

> B.   Failure to Reveal the
>       Confidential Informants' Identities

As to petitioner's first claim that the prosecutor violated his rights under the Confrontation Clause of the Sixth Amendment by failing to reveal the identities of the NYDETF's confidential informants, it is well settled that a criminal defendant has a Sixth Amendment right to confront only those witnesses who offer evidence against him or her at trial. See United States ex rel. Meadows v. New York, 426 F.2d 1176, 1184 (2d Cir. 1970) ("[A] defendant has no right to confront a 'witness' who provides no evidence at trial."); see also United States v. Coven, 662 F.2d 162, 170 (2d Cir. 1981) (finding that because a law enforcement agent was never called as a witness, no Sixth Amendment confrontation rights were implicated); United States v. Marcos, 87 Cr. 598 (JFK), 1990 WL 29368 at *4 (S.D.N.Y. Mar. 9, 1990) ("The right to confront adverse witnesses does not attach unless and until the witnesses appear at trial to offer testimony against the defendant."); accord Pavlik v. United

States, 951 F.2d 220, 224 (9th Cir. 1991) (same); United States

v. Kabbaby, 672 F.2d 857, 864 (11th Cir. 1982) (same); Shuler v.

Wainwright, 491 F.2d 1213, 1224 (5th Cir. 1974) (same).  "The

crux of [the Sixth Amendment right to confront witnesses] is that

the government cannot introduce at trial statements containing

accusations against the defendant unless the accuser takes the

stand against the defendant and is available for cross examina-

tion."  Ryan v. Miller, 303 F.3d 231, 247 (2d Cir. 2002).  Since

none of the confidential informants' statements were introduced

into evidence at trial,[2] there can be no Sixth Amendment

Confrontation Clause violation.

Numerous courts have repeatedly held that the Sixth

Amendment does not give rise to a right to confront confidential

informants whose statements are never introduced into evidence at

trial and are used solely as the basis for procuring electronic

surveillance warrants.  See, e.g., McCray v. Illinois, 386 U.S.

300, 313-14 (1967) (petitioner's contention "'that he was uncon-

stitutionally deprived of the right to confront a witness against

him[] because the State did not produce the informant to testify

against him'" is "'absolutely devoid of merit.'"), quoting Cooper

v. California, 386 U.S. 58, 62, n.2 (1967); United States v.

_____

[2]The statements from these confidential informants were used
solely as a basis of establishing probable cause in order to
obtain warrants for wiretap orders (Tr. 59-75, 84-85, 107-12,
194-97, 212-25, 341-42).  Their statements were never introduced
into evidence at trial.

Porter, 764 F.2d 1, 10 (1st Cir. 1985) ("[T]he government was under no obligation to call the informant as a witness at trial, and a defendant has no right to confront an informant who provides no evidence at trial."); United State v. Francesco, 725 F.2d 817, 822 (1st Cir. 1984) (same); United States v. Vila, 599 F.2d 21, 24 (2d Cir. 1979) (finding that the Sixth Amendment right to confront witnesses was not violated by the government's failure to produce an informer); United States v. Polisi, 416 F.2d 573, 579 (2d Cir. 1969) ("The Sixth Amendment safeguards the right of cross-examination, but it does not require the calling of any particular witness.").

Furthermore, disclosure of the informants' identities is not required under United States v. Roviaro, 353 U.S. 53 (1957), because petitioner has failed to show how the disclosure of the confidential informants' identities would have been material or essential to the defense of his case. As the Second Circuit stated in United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988):

> The defendant is generally able to establish a right to disclosure where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence. . . . But disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense.

(citations and internal quotations omitted); accord United States v. Jimenez, 789 F.2d 167, 170 (2d Cir. 1986) (even when the

informant is both a participant in the crime charged and a witness, the defendant still bears "the heavy burden of showing that disclosure is 'essential to the defense.'"). Petitioner has failed to sustain his burden. Unlike the informant in Roviaro, the informants in petitioner's case were not participants in or witnesses to the crimes charged. Neither the confidential informants, nor their statements, were mentioned in the indictment or introduced into evidence at trial. There is nothing in the record that remotely suggests that the informants possessed potentially exculpatory information. Petitioner's conviction was based upon evidence other than the informants' statements to NYDETF agents. The informants' statements were used solely to obtain warrants for wiretap orders. See McCray v. Illinois, supra, 386 U.S. at 311-14, n.11 (reaffirming, in the context of a probable cause hearing, that "federal officers need not disclose an informer's identity in applying for an arrest or search warrant").

Accordingly, petitioner's first claim that the failure to reveal the identities of the NYDETF's confidential informants was a violation of his Sixth Amendment right to confront wit-nesses against him fails on the merits.

C.   Petitioner's Putative Sixth
     Amendment Confrontation Violation

Petitioner also claims that he was denied his Sixth
Amendment right to confront Liz effectively because Liz invoked
his Fifth Amendment right against self-incrimination.  Peti-
tioner's claim unpersuasive.  Liz invoked his Fifth Amendment
privilege against self-incrimination only as to a collateral
matter; petitioner had ample opportunity to cross-examine Liz
effectively about his direct testimony.

Courts have recognized "that in some instances a
defendant's sixth amendment right to confrontation will be denied
as a result of a witness' invocation of his or her fifth amend-
ment privilege against self-incrimination."  Bagby v. Kuhlman,
932 F.2d 131, 135 (2d Cir. 1991); accord Dutton v. Evans, 400
U.S. 74, 102, n.2 (1970) (noting the "fundamental conflict
between a defendant's Sixth Amendment rights and a witness' Fifth
Amendment privilege").  The Second Circuit has promulgated the
following test to balance the competing interests:

> In determining whether the testimony of a witness who
> invokes the privilege against self-incrimination during
> cross-examination may be used against the defendant, a
> distinction must be drawn between cases in which the
> assertion of the privilege merely precludes inquiry
> into collateral matters which bear only on the credi-
> bility of the witness and those cases in which the
> assertion of the privilege prevents inquiry into mat-
> ters about which the witness testified on direct
> examination.  Where the privilege has been invoked as
> to purely collateral matters, there is little danger of

> prejudice to the defendant and, therefore, the wit-
> ness's testimony may be used against him. On the other
> hand, if the witness by invoking the privilege pre-
> cludes inquiry into the details of his direct testi-
> mony, there may be a substantial danger of prejudice
> because the defense is deprived of the right to test
> the truth of his direct testimony and, therefore, that
> witness's testimony should be stricken in whole or in
> part.

United States v. Cardillo, 316 F.2d 606, 611 (2d Cir. 1963)

(internal citations omitted); accord United States v. Brooks, 82

F.3d 50, 54 (2d Cir. 1996); Bagby v. Kuhlman, supra, 932 F.2d at

135; Dunbar v. Harris, 612 F.2d 690, 692-93 (2d Cir. 1979); see

also Pillsbury Co. v. Conboy, 459 U.S. 248, 260 (1983) (citing

Cardillo, with approval, as authority for the limitations that

may be imposed on the scope of cross-examination). In essence,

the analysis is two-fold: "(1) whether the matter about which

the witness refuses to testify is collateral to his or her direct

testimony, and (2) whether the assertion of the privilege pre-

cludes inquiry into the details of his or her direct testimony."

Avincola v. Stinson, 60 F. Supp.2d 133, 155 (S.D.N.Y. 1999),

citing Dunbar v. Harris, supra, 612 F.2d at 692-93.

During cross-examination, Justice Wittner instructed

Liz to answer defense counsel's questions concerning the

substance of Liz's direct testimony and prior crimes related to

petitioner's case, and Liz complied (Tr. 983, 986). However,

during Liz's cross-examination, the prosecutor advised the Court

that Liz was a subject of an open federal murder investigation

(Tr. 1018-23). Defense counsel moved to strike all of Liz's testimony if Liz asserted his Fifth Amendment privilege when asked questions about this investigation (Tr. 1023-24). Justice Wittner denied the defense's motion and found the investigation was "clearly collateral" to petitioner's case, and she advised Liz, upon his return to the witness stand, of his Fifth Amendment privilege (Tr. 1024-27). During cross-examination, defense counsel asked Liz whether he had provided a gun to Herrera sometime in the winter of 1996 to assist in the collection of a debt, to which Liz asserted his Fifth Amendment privilege (Tr. 1069, 1075). Justice Wittner, subsequently, instructed the jury that, although no inferences could be drawn as a result of Liz invoking the privilege, the jury could consider it in evaluating Liz's credibility (Tr. 1069-70); she reiterated this instruction in her final charge (Tr. 2352-53). The Appellate Division affirmed the Trial Court on this issue, finding the cross-examination questions concerning this alleged murder "unrelated to the conspiracy in question" and, thus, purely collateral to the subject matter of petitioner's case. People v. Jiminez, supra, 287 A.D.2d at 297, 731 N.Y.S.2d at 359.

The questions posed on cross-examination concerning this alleged murder were unrelated to petitioner's case and Liz's direct testimony. The alleged murder predated and was unrelated to the charges in the indictment. Indeed, the Second Circuit has

18

held "that a witness's testimony about other unrelated crimes may be collateral." United States v. Brooks, supra, 82 F.3d at 54, citing Dunbar v. Harris, supra, 612 F.2d at 694; see also Avincola v. Stinson, supra, 60 F. Supp.2d at 156 (S.D.N.Y. 1999) (citing Brooks and Dunbar and finding that questions related solely to a witness's prior criminal activities and unrelated to the charges against petitioner as collateral).

Furthermore, defense counsel effectively admitted that the alleged murder was collateral, stating that he was merely inquiring about it because it was "a prior bad act," which "goes directly to [Liz's] credibility" (Tr. 1023-24; Pet. App. Br. 50). In his habeas petition, petitioner reaffirms that the cross-examination inquiry into the alleged murder was relevant only because it "would have gone a long way toward impeaching [Liz's] credibility" (Pet. ¶ 12 Addendum annexed thereto at pp. 1-2). It is apparent, therefore, that petitioner's purpose for inquiring into the alleged murder on cross-examination was not to probe the substance or details of Liz's direct testimony, but rather to attack Liz's general credibility as a witness. When cross-examination concerns issues that were not part of the witness's direct testimony and are being used solely to attack the witness's generally credibility, the examination is collateral. See, e.g, United States v. Yip, 930 F.2d 142, 147 (2d Cir. 1991) (the crime inquired into "was not the subject of direct examina-

tion, and it was therefore a collateral matter bearing solely on [the witness's] credibility"); Air Et Chaleur, S.A. v. Janeway, 757 F.2d 489, 496 (2d Cir. 1985) ("Issues concerning a party's credibility are generally collateral."); United States v. Pelusio, 725 F.2d 161, 169 (2d Cir. 1983) (when "defendants simply sought to explore the witness' general credibility by cross-examining him with respect to collateral matters," "the witness' assertion of the privilege will be upheld and his direct testimony permitted to stand"); United States v. Calvente, 722 F.2d 1019, 1024 (2d Cir. 1983) (the matter at issue was "relevant only insofar as it cast light upon his character and his credibility as a witness" and such matters are "collateral matters going to [the witness's] credibility"); Dunbar v. Harris, supra, 612 F.2d at 693 ("If the purpose of cross-examination is to explore more than general credibility, the subject of inquiry is not collateral.").

Moreover, petitioner had ample opportunity to cross-examine Liz and to test the substance and details of Liz's direct testimony, in addition to challenging Liz's credibility, as evidenced by the breath of cross-examination testimony in the record (Tr. 979-1079 (cross), 1180-1194 (re-cross)). For example, defense counsel inquired into the terms of the deal Liz made with the prosecution in exchange for his testimony, (Tr. 979-83, 987-88), Liz's prior convictions, (Tr. 983-85), his

fleeing the country in 1991 during a pending criminal case (Tr. 985-87, 991), his drug trafficking and the details of his relationships with other drug traffickers (Tr. 990-1004), in addition to attacking various substantive details of Liz's direct testimony (see, e.g., Tr. 1004-16, 1028-79; 1180-93). See Delaware v. Fensterer, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.").

Accordingly, I find that the question concerning the alleged murder was purely collateral and, therefore, that petitioner was not entitled to have Liz's direct testimony stricken. Petitioner was not denied his Sixth Amendment right to confront Liz effectively when Liz invoked his Fifth Amendment privilege against self-incrimination on an unrelated, collateral matter.

D.   Insufficient Evidence Without
      the Testimony of Fellow Conspirators

In his final claim, petitioner argues that there was insufficient independent evidence to corroborate the testimony of fellow conspirators Liz and Cano and, therefore, there was insufficient evidence to convict petitioner of conspiracy in the second degree in violation of New York Penal Law Section 105.15. Petitioner's claim, however, fails to state a cognizable question of federal law and, therefore, habeas relief is unavailable.

21

A fundamental aspect of habeas corpus review is that
only violations of federal law are cognizable in a federal habeas
corpus proceeding; a violation of state law provides no basis for
habeas relief.  See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502
U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas
court to reexamine state-court determinations on state-law
questions.  In conducting habeas review, a federal court is
limited to deciding whether a conviction violated the Constitu-
tion, laws, or treaties of the United States."); Howard v.
Walker, supra, 406 F.3d at 121 (same); DiGuglielmo v. Smith, 366
F.3d 130, 137 (2d Cir. 2004)(same); Urena v. Lape, 373 F. Supp.2d
449, 454 (S.D.N.Y. 2005)(same); Smith v. Artus, 03 Civ. 9819
(AKH), 2005 WL 1661104 at *7 (S.D.N.Y. July 14, 2005) (same).

Although New York law requires the testimony of a
conspirator or accomplice to be corroborated in order to sustain
a criminal conviction,[3] there is no such requirement under the
United States Constitution or federal law.  See Martinez v.
Kelly, 01 Civ. 11570 (DAB)(JCF), 2005 WL 1863854 at *8 (S.D.N.Y.
Aug. 4, 2005), citing Lisbena v. California, 314 U.S. 219, 226-27
(1941) and United States v. Diaz, 176 F.3d 52, 92 (2d Cir. 1999);
accord Caminetti v. United States, 242 U.S. 470, 495 (1917)

---

[3]N.Y. Crim. Proc. Law § 60.22(1) states:  "A defendant may
not be convicted of any offense upon the testimony of an
accomplice unsupported by corroborative evidence tending to
connect the defendant with the commission of such offense."

("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."); United States v. Hamilton, 334 F.3d 170, 179 (2d Cir. 2003) ("'[A]ny lack of [conspirator or accomplice] corroboration goes only to the weight of the evidence, not to its sufficiency.'"), quoting United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989); United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993) (Under federal law, "[a] conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt."); United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988); United States v. Corallo, 413 F.2d 1306, 1323 (2d Cir. 1969); United States v. Mule, 45 F.2d 132, 133 (2d Cir. 1930); Spencer v. McCray, 01 Civ. 8029 (DAB)(FM), 2004 WL 1110244 at *8 (S.D.N.Y. April 30, 2004) (same); Besser v. Walsh 02 Civ. 6775 (LAK)(AJP), 2003 WL 22093477 at *24 (S.D.N.Y. Sept. 10, 2003) (Report & Recommendation), adopted, 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003) ("[T]here is no federal constitutional rule requiring the corroboration of accomplice testimony."); Hayes v. Coombe, 96 Civ. 865 (LLS), 1996 WL 650728 at *2 (S.D.N.Y. Nov. 7, 1996), aff'd, 142 F.3d 517 (2d Cir. 1998) ("[T]he requirement of accomplice corroboration is solely a product of New York State law; under federal law it has long been established that a defendant can indeed be convicted on the

23

uncorroborated testimony of an accomplice." (internal quotation marks omitted)).

Accordingly, petitioner's claim that there was insufficient independent evidence to corroborate the testimony of fellow conspirators Liz and Cano is purely a state law claim that is not cognizable in a federal habeas corpus proceeding.

Furthermore, and to the extent petitioner's argument can be construed as asserting that Liz's and Cano's testimony was insufficient because it was not credible, such an argument is also not cognizable on habeas review. The resolution of issues concerning a witness's credibility is a classic jury function. See Quartararo v. Hanslmaier, 186 F.3d 91, 95, 96 (2d Cir. 1999) (federal habeas courts must not assume "the position of a thirteenth juror"), citing Herrera v. Collins, 506 U.S. 390, 401 (1993); see also Callender v. McGuiness, 05 Civ. 942 (KMW)(GWG), 2005 WL 2461808 at *8 (S.D.N.Y. Oct. 6, 2005) (Report & Recommendation) ("'[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury' and thus a habeas court will 'defer to the jury's assessments of both of these issues.'"), quoting Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996); Anderson v. Goord, 03 Civ. 0905 (PKC), 2005 WL 2298157 at *5 (S.D.N.Y. Sept. 20, 2005) ("It is not the province of a habeas court to reevaluate credibility determinations made by a jury

that was presented with the opportunity to observe those wit-
nesses.").

Finally, petitioner argues that because he was found
not guilty on the charge of criminal sale of a controlled sub-
stance in the first degree, the jury must have disbelieved the
testimony of the prosecutor's witnesses.  This argument, however,
is contrary to well established precedent:  "The review of the
legal sufficiency of the evidence with respect to one count
should be independent of the jury's determination that the
evidence on another count was insufficient to meet the govern-
ment's burden of persuasion."  United States v. Acosta, 17 F.3d
538, 545 (2d Cir. 1994), citing United States v. Powell, 469 U.S.
57, 62-65 (1984); accord United State v. Jespersen, 65 F.3d 993,
998 (2d Cir. 1995) ("[S]ufficiency of the evidence is reviewed
independently for each count, ignoring the jury's determination
that evidence on another count was insufficient." (internal
quotation marks omitted)).  Thus, petitioner's argument has no
basis in law.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that the petition be denied in all respects.

In addition, since petitioner has not made a substan-
tial showing of the denial of a constitutional right, I also

25

recommend that a certificate of appealability not be issued. 28 U.S.C. § 2253(c). To warrant the issuance of certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Middleton v. Attorneys General of States of N.Y. & Pennsylvania</u>, 396 F.3d 207, 209 (2d Cir. 2005) (<u>per curiam</u>)(quotation marks omitted); <u>see also</u> <u>Love v. McCray</u>, 413 F.3d 192, 195 (2d Cir. 2005) (<u>per curiam</u>). For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

## V. <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. <u>See</u> <u>also</u> Fed.R.Civ.P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk

26

of the Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, United States District Judge, 40 Centre Street, Room 2103, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         January 9, 2006

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Irving Anolik, Esq.
225 Broadway, Suite 1902
New York, NY   10007

Darian B. Taylor, Esq.
Assistant Attorney General
Office of the Attorney General
State of New York
Habeas Corpus Section
Criminal Division
120 Broadway, 22nd Floor
New York, NY   10271